SDNY PRO SE OFFICE

2023 JAN 27   AM 10:40

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Sarah Ritter Marino

_____

Write the full name of each plaintiff.

-against-

# CVS Health

_____

# Hillary Williams

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

_____CV_____

(Include case number if one has been assigned)

Do you want a jury trial?

☐ Yes   ☒ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Sarah | Ritter | Marino |
|---|---|---|
| First Name | Middle Initial | Last Name |

88 Delavan Avenue
_____
Street Address

| Dutchess, Beacon | New York | 12508 |
|---|---|---|
| County, City | State | Zip Code |

| 914-456-2121 | rittermarino@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   CVS Health
_____
Name
1 CVS Drive
_____
Address where defendant may be served

| Providence, Woonsocke | Rhode Island | 02895 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:   Hillary Williams c/o CVS Health
_____
Name
1 CVS Drive
_____
Address where defendant may be served

| Providence, Woonsocke | Rhode Island | 02895 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

_____

Name

_____

Address where defendant may be served

_____

County, City                    State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

CVS Health

Name

413 NY-376

Address

Dutchess, Hopewell Jct          New York              12508

County, City                    State              Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☐  race: _____

   ☐  color: _____

   ☐  religion: _____

   ☐  sex: _____

   ☐  national origin: _____

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☒ Other (may include other relevant federal, state, city, or county law):
    Unpaid Wages _____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me

- ☒ terminated my employment

- ☒ did not promote me

- ☐ did not accommodate my disability

- ☒ provided me with terms and conditions of employment different from those of similar employees

- ☒ retaliated against me

- ☒ harassed me or created a hostile work environment

- ☒ other (specify):  <u>Unpaid Wages</u>

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

<u>Kindly See Addendum</u>

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐    Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?    _____

☒    No

Have you received a Notice of Right to Sue from the EEOC?

☐    Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?    _____

When did you receive the Notice?    _____

☒    No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐    direct the defendant to hire me

☐    direct the defendant to re-employ me

☐    direct the defendant to promote me

☐    direct the defendant to reasonably accommodate my religion

☐    direct the defendant to reasonably accommodate my disability

☒    direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Money damages  for pregnancy discrimination, FMLA violation and unpaid wages.
Hold CVS Human Resources and Hillary Williams civilly and/or criminally liable for negligence.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 1/24/23 | |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| Sarah | Ritter | Marino |
| First Name | Middle Initial | Last Name |

88 Delavan Avenue
Street Address

| | | |
|---|---|---|
| Dutchess, Beacon | New York | 12508 |
| County, City | State | Zip Code |

| | |
|---|---|
| 914-456-2121 | rittermarino@gmail.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Addendum:

B. FACTS

Dear Judge:

I began employment with CVS in 2012 having received my Doctor of Pharmacy (Pharm.D.) from Duquesne University. I was ready to be a loyal, dedicated Pharmacist and planning to spend my entire career at the Company. I quickly took on any assignment asked of me including store transfers to fill staffing gaps in Poughkeepsie, New York and pharmacy leadership opportunities given to me including in Peekskill, New York.

By 2016, I had a reputation as one of the region's best. I won a Paragon award for outstanding performance in the region. I was flown down to Florida to accept my award by the Company. I entered CVS's Foundations for Leadership program to prep me to be a leader. By most standards, I was doing well in my role.

In 2017, I was assigned to take over as Managing Pharmacist of CVS Store #5357 in Hopewell Junction, New York. The plan was that I would assume the role after my proposed FMLA for the birth of my first child. CVS Store #5357 was one of the largest stores in the region, serving about 3,500 prescriptions per week. For reference, one large study in 2019 showed the average annual prescription volume per pharmacy was 57,414, or about one-third the volume of this store. It was an exciting opportunity for me.

In April 2017, I took FMLA for the birth of my first child, Henry Marino. When I returned from FMLA in September 2017, I assumed my new role. As soon as I arrived it was clear the store was working with a staffing budget too small to operate compliant with the law and too small to properly maintain patient safety. I began voicing this to my District Leaders.

From 2017 to 2019, I was regularly granted additional technician and pharmacist hours on an as needed basis, including additional hours for myself in order to ensure patient safety, regulatory compliance, and client service. The arrangement was informal. I would report the hours worked after they were used based on trust of my professional judgement and leadership, but also before they were used too.

In August 2019, however, Sweta Patel took over as District Leader. With the entry of Sweta staff hours and discretionary staff allowances declined for the worse. Sweta would regularly deny additional hours that we needed to complete basic, mandatory tasks. She would do so via phone and regularly admonish me in private to produce more and to get staff to produce more and threaten me with the loss of my job if I did not work in these conditions that I deemed to be risks to patient safety and conditions out of compliance with the law.

What was more perplexing is Sweta presented herself as more even-handed, but still very strict on staffing, via text message, in email, and in public forums. As a factual example, in August 2019, she directed me by telephone to oversee overnight renovations of my new store, Store# 5357, to prove my,

*"Commitment to the business"*

She said this even after I told her I was pregnant. When she threatened me with termination I agreed. On August 24th, I sent her a video of me working in the store at 2 AM. She lauded my hard work via text message, but I was privately denied payment.

Right from the start, there was a trend of privately being threatened to work more and without pay. Whenever I brought up my pregnancy it was met with threats of termination if performance slipped as well as regular denial of pay when overtime was genuinely required to meet the demands of patient safety and compliance. Technician hours were cut as well. They were cut so deeply we could not perform basic tasks. The situation degraded so much that eventually I texted her flat out,

> *Should I be prioritizing maintaining the tech budget over business needs and workflow?"*

To which she replied,

> *"Like I said we can discuss over phone."*

Finally, despite my ongoing requests for more staff to maintain patient safety, in October 2019, I was the Supervising Pharmacist the day a dispensing error occurred -- a patient got a higher dose of Ozempic than was medically advisable. At the time I was being forced to work excessive hours without overtime pay due to staffing cuts and the pharmacy was behind on filling hundreds of prescriptions. I was also pregnant but was advised repeatedly by Sweta that any slowdown in work would result in my termination – a threat that I now know was not lawful, but I did not know this at the time and thought it was company policy. I was scared my boss would make me lose my job right when I needed it most.

After the error occurred, I was analyzing the situation for ways I personally could improve when I discovered that the prescription in which the error occurred was an invalid fax prescription. As a matter of fact, CVS e-prescription acceptance software "RxConnect" regularly recieves invalid fax prescriptions when a doctor sends in a prescription that cannot be filled due to requesting in their system a dose or drug modality that does not exist. What results from this exchange of software is what looks like a normal prescription in every way except for small illegible fine print that cannot be read by the human eye unless under magnification, which reads

> *"ADVISORY ONLY - NOT A VALID PRESCRIPTION..."*

As it turned out, CVS has a de facto policy of regularly generating invalid prescriptions into the Pharmacy without notifying its pharmacists that these were invalid, except for this illegible notice.

During my tenure of almost a decade, we had received no memos alerting us to this, nor any training on how to handle this. When I began to speak with colleagues, I quickly realized none of my colleagues knew this was an issue either and I started to see invalid prescriptions like this arriving from all over the country. I began to spread the word to my colleagues that our nation-wide e-prescribing acceptance system was producing invalid prescriptions for Pharmacists to act on and that this was a significant risk to our patients.

I spoke with Sweta Patel on this in 2019 and spread the word among colleagues from 2019 to the end of my tenure as well communicating this issue to CVS Professional Practice in

Marino Addendum B. Facts 2

2020 and again in August 2022 through Adriana Giordano, at which point an internal memo was generated that same month on how to handle invalid prescriptions.

Nevertheless, from the start of my advocacy on this issue, my negative treatment not only continued, but it also seemed to intensify. On December 12th, 2019, I reported via text message that Sweta said to me with respect to my pregnancy and productivity requirements

> *"If that's something you can't figure out then that's someone who won't be working for me."*

On January 12th, 2020, I reported to that same colleague via text that Sweta regularly requires more work than can be accomplished in allotted hours and then denies overtime pay. I reported that I was going to get Human Resources involved, especially after a chair went missing in the pharmacy that I and another pregnant woman were using during shifts. On February 2nd, 2020, I reported via text message to another colleague that I was regularly threatened by Sweta.

In March 2020, I had my performance review with Sweta where she gave me a 2 out of 5 and told me next year, she would give me a 1 and have grounds to terminate me, despite the tremendous growth of our store, the store I led, which was graded a 3 out of 5 and which had grown in prescription volume by then to over 4,000 – 4,500 per week.

In April 2020, I went on FMLA for the birth of my second child, Sophia Marino. While on FMLA, a NYS Investigator came to CVS Store #5357 to investigate the aforementioned Ozempic error. My new District Leader, Michelle Zariello and I spoke via telephone on this issue while I was on FMLA. She ordered me to the work task of reviewing the situation from 2019. I told her I was on FMLA and did not have access to any documents. I requested a CVS lawyer, and she denied my request, despite a CVS lawyer being a clearly stated benefit afforded to all CVS pharmacists in these situations as specifically provided for in CVS Training Module 269022 "Reporting Regulatory Visits". She then told me she would get me a copy of the prescription and ordered me to review it after we spoke. She subsequently sent photos of the prescription to me via text, scheduled me a meeting with the investigator, and scheduled it for a day when I was still on FMLA. Fearing for my job, my only thought was to comply and to contact HR.

As a result of being denied counsel and being required to speak to an investigator and being ordered to do work while on FMLA I decided to call Human Resources (aka "Advice and Counsel") to inquire further about this denial as well as to discuss my aforementioned treatment while pregnant and my unpaid work. No one answered. I left a message with Human Resources, as later corroborated by Hillary Williams, Sr. HR Investigator in our January 4th, 2023, meeting, a meeting I was denied the right to record. In that meeting, Hillary Williams herself corroborated that Human Resources neglected to contact me for any interview or investigation in follow up to my 2020 inquiry.

After I spoke to the investigator, the investigator demanded a written statement. In speaking with Michelle in follow up—again still on FMLA—I asked for a lawyer to review my written statement. Michelle told me to go get my own lawyer.

Your honor, this series of events ruined my FMLA and resulted in my coming back earlier than I would have, in total fear for my job and my career. The fact that HR neglected to so much as call me back was outrageous and only added to my emotional distress. It was around

this time in 2020m I started cognitive behavioral therapy for panic attacks. In 2021, I started medication for the treatment of anxiety and depression. In 2022, my therapist linked my anxiety and depression to PTSD from my treatment by CVS and encouraged me to go to a psychiatrist for a formal diagnosis.

In 2021, shortly after my return to work, and being totally burnt out by all of this, I gave my resignation to my District Leader as well as my Regional Leader Scott McElfresh. This resulted in a conference where I fully disclosed all the aforementioned events, the FMLA issue, my patient safety concerns, the threats issued by Sweta and my unpaid time. I was ensured these claims were taken seriously and expected them to be escalated to HR. I was asked to stay at CVS and promised things would change under my new District Leader, Chris Duffy. Loyal, scared, intimidated and with a new baby to provide for, I stayed. I would suffer panic attacks while working in this period and this could be corroborated by my colleagues who witnessed me cry and shake while working.

Things only got worse in September 2022, when, after an Informal Settlement Conference with the Board of Pharmacy regarding the Ozempic error, the Board of Pharmacy gave me Probation, stayed Suspension and a fine of $5,000. From that point forward, my license to practice pharmacy was permanently besmirched. I would have to report this to any employer on any application and this would affect my ability to gain employment for the rest of my life. I was told privately by one of my peers who stood in judgement at the settlement conference that my true error was that I did not blow the whistle on CVS even in the face of this hostile environment and fearing for my livelihood.

On September 30th, 2022, I wrote to my District Leader requesting relief. I requested my fine be paid, my attorney fees paid, compensation be made for my damaged license, and to be placed in a new role during my probationary period. In this letter, I formally documented my FMLA claim, unpaid wage claim and pregnancy discrimination claims once and for all. The expectation was that Human Resources, again, would get involved. Yet, I received no response from Human Resources. When I made inquiries into the status of my claims with Chris Duffy, I received various forms of prevarication as documented in my December 19th follow up letter.

On or about December 12th, 2022, a new Pharmacist schedule with significantly reduced professional hours was rolled out. My store now would face even further cuts to Pharmacists staff with prescriptions now running at about 5,000 per week.

Further, this pharmacist reduction was not being done across all stores equitably or proportionally. This reduction in pharmacist hours came to CVS Store #5357 even after unprecedented growth in revenue and prescription volume while other stores that had less growth, no growth or negative growth received no reduction. Just as with Sweta and Michelle, I was uncomfortable, I was scared, intimidated and worried I needed to accept these unreasonable terms.

On December 16th, 2022, however, I advised Chris Duffy by telephone that this new schedule, at a minimum would be unable to comply with Offer to Counsel Laws such as NYS Pharmacy Law 8 CRR-NY 63.6 (B) (8) and OBRA '90 and further that I now understood that practicing in a pharmacy that I assess to be not compliant with the law is unprofessional conduct prohibited by Article 137, Part 29 of the NYS Rules of the Board of Regents. In response, I was

told that if I did not agree to work with reduced pharmacy hours in non-compliance with patient safety laws then (management) would have to,

*"See about moving you to other locations."*

Your honor, I was threatened with discharge from my role if I did not accept conditions that I judged to be unsafe for patients, facing, once again, the same combination of coercion and disregard for patient safety that resulted in permanent damage to my license. My request for a role change in my September letter went unanswered and yet when I would not take on undue risk and threats to patient safety suddenly I could be moved.

On December 19th, 2022, I wrote a letter to Chris Duffy declaring my resignation as of January 15th, 2023, to coincide with the new schedule. I made it clear that this was in protest of the new schedule which further risked patient safety and my license. In this letter I restated my HR claims had not been addressed and I threatened to sue unless I received mediation of my discrimination, wage and FMLA issues by January 1st, 2023. None of my District Leadership ever formally or informally accepted this resignation. In fact, this letter was met with a call from Raj Dodani, one of my very first District Leaders telling me what a great pharmacist I am and pleading with me to stay.

Nevertheless, after my threat to sue, I was contacted the very next day, by Hillary Williams, Sr Manager Investigations, HR Colleague Relations CVS Health via email with a CC of Cassandra Fuller, outside counsel. A meeting was requested where I would be asked to,

*"Start discussing a potential resolution".*

In subsequent back and forth via email I was denied my request for this meeting to proceed in writing and told I could not record it. In a sign of good faith, I agreed to set a meeting for January 4th, 2023, on their terms. In further back and forth via email I learned that Cassandra Fuller was allegedly included for me to discuss

*"What monetary amount you are seeking".*

As a result of this, on December 29th, 2023, in anticipation of the meeting, I sent both Ms. Fuller and Ms. Williams an email attempting to estimate my damages. I wrote,

*"I have major damages I conservatively estimate to be $4 million."*

Your honor, this was not an arbitrary or bad faith estimate. I attempted to have various lawyers estimate my damages, all of which declined unless they were allowed to attach themselves to the settlement. All, however, wanted to take the case and responded affirmatively to the details of the situation.

In the damage letter I have attached, I attempted to present other cases that could be points of comparison. I tried to maintain good faith and do calculations of my damages based upon my research of how to calculate FMLA, Pregnancy Discrimination and Unpaid Wage damages. Aside from approximately 700 hours of unpaid wages and emotional damages from my discrimination while pregnant, I also figured the loss to my income for the next 30 or 40 years resulting from exiting my role would be $50,000 to $60,000 per year. As it turns out, I was

making about $145,000 and at my Per Diem role at the NYS Department of Corrections I have the potential to make approximately $90,000 per year.

On January 3rd, 2023, I was told via email that our January 4th meeting would no longer include Cassandra Fuller since I had made a quantitative monetary demand.

On January 4th, 2023, I had a virtual meeting with Hillary Williams and Logan Wadell, also of CVS HR. I asked several questions in furtherance of my discovery of the facts in my claims. The overwhelming majority of these questions were met with various forms of declining to answer. I inquired into, among other things, whether Ms. Williams had interviewed Sweta Patel, Michelle Zariello or Chris Duffy to verify I was being treated neutrally and in good faith. Ms. Williams told me that she could not discuss the conversations or reports of other CVS employees as a matter of CVS policy. As I asked additional questions Ms. Williams' seemed to get frustrated or hostile. I was told repeatedly

*"We are not here to discuss this."* or *"I cannot answer that."*

After ending my questioning—since it was clear Ms. Williams would not answer them substantively—I was then asked many questions by Ms. Williams. I answered them all in good faith consistent with my letters. It was during her questioning that Ms. Williams questioned me about my call to HR in 2020 and the nature of my message. Further, during her questions, Ms. Williams requested all my evidence and provided me with zero additional opportunity for discovery. I requested CVS internal documents and Ms. Williams denied me.

As a result, I immediately wrote via email to all 3 parties, Outside Counsel Fuller, HR Investigator Williams and her assistant Wadell,

*"In light of the continued lack of good faith communication on these matters I will not be supplying additional information until further notice and instead I am demanding an offer to settle by 12 PM January 11th, 2023. If an offer is not received by this time, in writing, I will accelerate my resignation, file complaints with the NYS Division of Human Rights, commence a lawsuit on my personal claims and pursue legal action with respect to my Qui Tam claims."*

On January 11th, at 11:14 AM, Cassandra Fuller wrote to me via email attempting to both make an offer and accept my new, amended resignation terms that were contingent upon an offer not being made. The offer to settle was for $15,000, totally denying all wrongdoing and providing no estimate how they came to $15,000. As if to make matters worse, I was further told that CVS didn't believe any of what I said. In the email, Ms. Fuller wrote, in reference to Ms. Williams' HR investigation,

*"Based on the investigation conducted to date, there is no indication that the Company engaged in any unlawful conduct."*

Your Honor, that Hillary Williams' 2023 investigation could yield "no indication that the Company engaged in any unlawful conduct." despite possession of evidence by her own

admission that CVS HR neglected to call me and neglected to investigate my FMLA claims in 2020 is itself fraudulent, or negligent, or both, but in any case, totally outrageous. In addition to all my other suffering this total lack of willingness to believe any of my story despite having facts to support it has inflicted great emotional distress on me.

On January 11th, at 1:58 PM, I responded via email that there was no good faith estimate or attempt to show me they evaluated my claims fairly. I further wrote, "Given the fact that my resignation was predicated on an offer being produced and since an offer has subsequently been produced, I intend to continue my employment with CVS Health starting Tuesday 1/17/2023. I'm going to return to work to prevent a new schedule going into effect for patient safety, to ensure that all current and historic invalid prescriptions are properly documented, and to ensure that all of my colleagues are aware of the FCA issue and are properly documenting them as such"

On January 12th, Hillary Williams wrote

> "...you stated on multiple occasions, using multiple outlets, that you were resigning from CVS. Based on those various communications, including your statements to your District Leader that January 10, 2023, was your last shift with CVS, the Company accepted your resignation and processed it, effective January 11, 2023. The Pharmacy has already taken steps with regard to the new PIC, and, accordingly, you will no longer be scheduled shifts with the Company."

On January 12th, I responded,

> "Dear Ms. Williams, This is now constructive termination in addition to all of my other claims. All of my resignations were clearly predicated and clearly left us both the ability to avoid resignation if certain criteria were met. Those conditions were met. CVS has chosen to mediate my labor claims and make me an offer.
>
> I spoke with my current district leader last night [January 11th] and she clearly noted my resignation had NOT been processed and that she was specifically waiting.
>
> This is retaliatory. I've CC'd Cassandra Fuller to be clear on this issue."

Your honor, in my January 4th meeting with Ms. Williams, she specifically denied me any information as to whether she spoke with Sweta Patel, Michelle Zariello / Muller and others at CVS on the grounds she could not discuss other employees as a matter of CVS policy. Yet and still, in our subsequent email discussion of my contested resignation, Ms. Williams divulged the alleged testimony of "District Leader" Victoria Rodgers, an employee of CVS. I say alleged because my conversation with Victoria ensured me the exact opposite of what Ms. Williams claims. This was done ostensibly to manufacture the grounds on which to constructively terminate me, despite the conditional terms of resignation not being met, the explicit rescission of my resignation. Regardless, Ms. Williams engaged in selective disclosure of employee information and she did so to exercise the authority to not only remove me from my position, but to altogether sever my work relationship totally with CVS.

Marino Addendum B. Facts 7

Ms. Williams did this despite my December 19th letter making explicit. Ms. Williams used this selective "disclosure" of employee conversations as both a sword and a shield to serve her interests and the interests of CVS in a flagrant act of false representation, and neglect of good faith. This was completely outrageous. In addition to all the other suffering this matter has caused me, Ms. Williams' has inflicted great emotional distress with her actions and, as has been the track record of others at CVS, significantly impeded my ability to resolve my FMLA and FLSA claims.

On January 18th, I wrote one final email pleading with Ms. Fuller and Ms. Williams to believe what happened to me including video and text messages substantiating my claims, evidence I was hesitant to give them prior for fear they begin preparing lawsuit defense based upon these items.

I opened that letter:

> *"Dear Ms. Williams and Ms. Fuller,*
>
> *I am so totally exasperated by your unwillingness to believe what happened to me. This is the same-don't-believe the victim culture that pervades our society in other arenas and, as women, you should know exactly what I am talking about. It is shameful that I am being put through this and that you, two fellow women, are perpetuating this…"*

I then sent the attached supporting documentations of my claims:

- A contemporaneous text message by Michell Zariello substantiating my FMLA recitation of events.
- A contemporaneous video of me in the Pharmacy overseeing construction at 2 AM substantiating my claims with respect to Sweta Patel.
- A text message to my colleague contemporaneously documenting unpaid wages substantiating my recitation of events with respect to Sweta Patel.
- A text message to my colleague contemporaneously documenting threats substantiating my recitation of events with respect to Sweta Patel.
- A text message to Sweta contemporaneously documenting unsafe staff levels substantiating my recitation of events with respect to Sweta Patel.
- A text message to a colleague contemporaneously documenting Sweata threatened to terminate me substantiating my recitation of events with respect to Sweta Patel.

Having received no communication in response to this email on January 18th or January 19th, I advised Fuller and Williams on January 20th that I would submit a complaint in US District Court naming CVS and Williams as Defendants. And then, just like when I did not receive a response to my September 30th letter until I threatened lawsuit, Ms. Williams responded almost immediately.

Your Honor, this is perhaps less serious than my other claims, but this is a track record of neglecting my good faith communications until threat of lawsuit and it is in total disregard of any reasonable duty of care owed to me. Further it is in keeping with a clear pattern of negligence.

In my January 20th response I furnished additional requested details in good faith and made a last demand for the following information:

- The date and results of any interview/s with Sweta Patel as well as independent evidence that this interview was conducted before January 11th (so as to verify Ms. Williams was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- The date and results of any interview/s with Michelle Zariello and independent evidence that this interview was conducted before January 11th. (so as to verify Ms. Williams was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- The date and results of any interview/s with Chris Duffy and independent evidence that this interview was conducted before January 11th. (so as to verify Ms. Williams was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- The date and results of any interview/s with Victoria Rodgers and independent evidence that this interview was conducted before the "processing" of my resignation. (so as to verify Ms. Williams was not negligent or fraudulent in her claims regarding my contested resignation)
- The name of the person at CVS who ordered this investigation and the date of his/her order (so as to verify CVS was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- My personnel file. (so as to verify CVS was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- Timestamped, independently verified evidence that my resignation was processed before my declaration to return to work. (so as to verify Ms. Williams was not negligent or fraudulent in her claims regarding my contested resignation)
- Your notes on my case. (so as to verify CVS was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- All notes pertaining to my 2020 call to HR/ "Advice and Counsel". (so as to verify CVS was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- All notes, conversations and decisions immediately after the receipt of my September 30th letter. (so as to verify CVS was not negligent or fraudulent in claiming her investigation found "no indication that the Company engaged in any unlawful conduct.")
- All communications on my case between Cassandra Fuller and CVS.
    - Per Koumoulis, et al. v. Independent Financial Marketing Group, Inc., Fuller and CVS are not entitled to claim attorney-client and/or attorney work-product privilege to their communications because Fuller provided Human Resource Advice and/or Business Advice to CVS in the following ways:

- Fuller accepted my resignation terms on behalf of CVS, proving some level of conferral on the matter
- Fuller directed my return to work intentions into CVS HR proving some level of conferral on the matter;
- Fuller refers to Williams' investigation in her settlement offer proving Fuller conferred at some level on Williams' HR, in construction of the offer.

On January 23rd, 2023, I appeared at CVS Store #5357 to turn in my keys to the Pharmacy. In the "processing" of my resignation that was allegedly too late to reverse, neither Ms. Williams, nor Ms. Rodgers, nor anyone from CVS bothered asking me for my physical keys to the pharmacy.

As a Pharmacy Leader who has dealt with many resignations and terminations, I know that there is a checklist at the CVS HR Website which shows the steps of processing a termination or resignation. A key part of this processing of an employee severance is collecting CVS property. Requesting and receiving the keys to physically open a pharmacy is the single most critical part of the collection. There is a legally mandated requirement to secure a pharmacy. This is proof that CVS was in an undue rush to keep me out of the store.

Also of note, I spoke to a key person in the Pharmacy, whose identity I wish to protect for the time being. That person represented to me that no one even bothered to ask him about my supposed in-store declarations of resignation that Ms. Williams alleges. To date, I have yet to substantiate her allegations that I made in-store declarations of my resignation.

As of the date of this letter (January 24th, 2023), I have not received the information requested on January 20th. I was, however, told that Hillary Williams had been removed from the investigation considering my concerns.

Your Honor, I am not a lawyer. I've done my best to analyze the legal aspects of my situation, but I'm sure there are many technical details of this matter I am missing. I have tried my best to bring forward the facts. Regardless of legal outcome I am convinced that CVS and its personnel have repeatedly wronged me and done me numerous damages and that the culture represented here is damaging not just to me, but to the millions of patients who rely on CVS to provide safe and legally compliant healthcare. I humbly ask for clarity on this issue and for any relief you deem is appropriate.

The contemporaneous text message by Michell Zariello substantiating my FMLA recitation of events.



The contemporaneous video of me in the Pharmacy overseeing construction at 2 AM.



The text message to my colleague contemporaneously documenting unpaid wages.

Ryan >

wbu

I stayed until Midnight to clean up our que. I emailed her asking for compensation. She didn't respond to the email. Called Nicole and had Nicole call me to tell me that I would not be getting paid.

I'm calling Monday for reasonable accommodations.

Getting hr involved about my pregnancy and refusing to put another minute more in

If she called me or emailed me herself I would consider it differently but she made Nicole so her dirty work.

Do*

that's complete bullshit and not fair! i am so over it

she didn't even have the decency to say anything to you



The text message to my colleague contemporaneously documenting threats.



The text message to Sweta contemporaneously documenting unsafe staff levels.



We can't just use hours we feel Sarah.

We are following wecare best practices but our Qs are behind. We are not approved hours to clean up after shift and so we are working with in the business hours both pharmacist and tech. Many stores are struggling with the amount of work flow right now. We are using extra hours to complete necessary compliance tasks as well as daily activities. Again I just want to confirm, should I be prioritizing maintaining tech budget over business needs and workflow?

  

      

The text message to a colleague contemporaneously documenting Sweata threatened to terminate me.

Dec 12, 2019 at 10:11 PM

Sweta is so not helpful, and so self absorbed, it drives me nuts. She threatened my job today and I'm just so burnt from her nonsense. She's ungrateful and rude and condescending and I can't deal with it.

what do you mean she threatened your job?

"If that's something you can't figure out then that's someone who will not be working for me"

I took that and it felt like a threat

Joe was with me in the meeting and basically came into the pharmacy after and was like rite aid is hiring.

**From:** Sarah Ritter Marino <rittermarino@gmail.com>
**Date:** December 29, 2022 at 6:32:15 AM EST
**To:** "Fuller, Cassandra" <cfuller@morganbrown.com>
**Cc:** "Williams, Hillary" <Hillary.Williams@cvshealth.com>
**Subject: Re: Your Resignation Letter**

Good morning Ms. Fuller and Ms. Williams,

Please see the attached document pertaining to our January 4th meeting.
Ms. Fuller and Ms. Williams,

I know you wanted to collect some more information on my concerns and my needs from a settlement perspective. I am writing to help our January 4th meeting be a little more amicable and to share with you some additional information to help you see things from my perspective.

After consulting with multiple attorneys on the validity of my claims, the strength of my evidence, and the extent of my damage, I think it's fair to share with you that I have major damages that I conservatively estimate to be $4 million.

I believe I could probably make a realistic settlement case for double this amount in damages or perhaps more if this escalates into complex litigation and pursuit of a Qui Tam action. To be clear, I'm not asking for $8 million in damages. My $4 million estimate is frankly on the low side and I'm estimating this in an effort to settle this quickly.

I want to stress I have not retained counsel as yet and I am continuing to represent myself in the hopes this can be settled expediently and amicably without litigation or complex negotiations so I can move on with my life.

In terms of my damage, please know I have been in therapy since 2019 because of what CVS has done to me. My therapist believes I have PTSD from how I have been treated. I have been on anxiety medicine for the past 12 months and I have had 3 agonizing years of emotional pain. 3 years that were supposed to be the most joyful years of my life with my new daughter, Sophia.

CVS has caused great personal hardship to me and to my family, but it also has materially damaged my career. Retail pharmacy was not just a job, it was one of my greatest sources of joy. And I may never be able to return to retail pharmacy, if not for the mark on my license than out of sheer panic because I break out into tears in the middle of shifts and have to excuse myself from the bench. There's no doubt I will have to confine myself to a different, lesser job.

Ms. Fuller, it's hard to admit, but I'm damaged goods. My income for the next 30 or 40 years is going to be $50,000 to $60,000 less every year at a lesser job. This calculation alone is $1.5 million to $2.8 million in damages without considering anything else. These actions against me have ruined my career trajectory.

In some sense I can't even quantify all the future financial damage. Once upon a time, I was on a fast track to leadership, a CVS Paragon award winner and selected into the Foundations for Leadership program. Just a week ago District Manager Raj Dodani begged me to stay at CVS

and told me I was one of the best pharmacists he knew. I had plans to rise as high as possible and maybe one day be a National Leader in Retail Pharmacy at CVS. That is gone.

It's not just tangible future pay and the potential to rise at CVS to higher and higher pay that I've lost though. I've lost income these past three years. I've missed raises and promotions. I've been passed over for District Leadership roles that less experienced, less capable people have received.

I make $74 per hour right now. I am one of the longest tenured pharmacists in the district at one of the top grossing pharmacies in the region. I have taken every leadership assignment asked of me and grown every pharmacy I led.

And yet new fair disclosure laws show me that CVS is hiring new Pharmacy Managers off the street in New York at up to $82 per hour.

Are there pharmacy managers or pharmacists with less experience or less responsibility making more in New York?

And in light of all this, how do I know the actual value of my damages?

The truth is no one knows the exact amount.

I know a pregnant employee at Chipotle was recently given $500,000 by a jury because she was pregnant and had to announce her bathroom breaks and hold it for extra minutes.

I know I have had to hold my restroom breaks for years, also while pregnant, for hours, under threat of termination for not being productive enough and out of fear of retaliation as recently as this month. This doesn't even capture the past 3 years of psychological trauma I've endured due to pregnancy discrimination.

I know I've had threats made to me of termination to coerce me to work faster and chairs taken out of my pharmacy while pregnant to try and prevent me from even sitting down while pregnant to instill in me the need to produce.

I know this doesn't even consider the FMLA aspects of this complex situation.

I know a Massachusetts judge recently gave a man $1.3 Million in damages because he wasn't allowed to come back from FMLA a few weeks early and then he accidentally received a mildly disparaging email from HR.

I know CVS HR has literally stonewalled me for months, despite being in receipt of my grievances. This is not to even mention in 2021 when I brought up that I had been threatened while pregnant to a newly appointed DL, HR never reached out. In fact, I wouldn't be surprised if HR was never even notified of my concerns. This lack of communication or empathy for me was perhaps intentional. What's more, the gentleman in Massachusetts didn't have significant financial hardships. Meanwhile my career has been ruined.

I know in another FMLA case, a software salesman was given $2.8 Million because his Sales Manager jokingly said that his wife would need to "cancel her pregnancy".

I know this man got almost $3 million dollars and he was not even financially damaged because his boss made a very stupid remark and was not disciplined.

I know I had my license damaged forever and came back much sooner than I would have from FMLA out of utter fear. I had my boss threaten my pregnancy, and CVS has taken no action against her or any of my DLs despite being told about the situation over and over. My situation is literally materially worse than this man's situation by orders of magnitude and he received almost $3 million.

And while these cases demonstrate the FMLA aspects of my damages, they do not consider the unpaid wages and Qui Tam aspects of this really very unfortunate situation.

Ms. Fuller, I have worked 100s of unpaid hours to help maintain patient safety under the threat of termination to help my colleagues and my patients all while trying to reform these issues from inside CVS. Not only was I not paid, I was punished.

In fact, when I had to face the NYS OPD alone, without any support from CVS, the lead member at my hearing told me that all my troubles could have been avoided by just blowing the whistle on CVS when I was first concerned with patient safety. I was told I still can. I was told that I still should.

To this point, Walgreens just had to pay $22.4 Million in NY for faking valid prescriptions of Synagis. The whistleblower got $4 million.

If I blow the whistle Ms. Fuller, this is not one drug. I am talking about the systematic acceptance of invalid prescriptions across countless stores, across countless drugs happening even today, despite my directly advising CVS. In fact, I reported the invalid faxed prescriptions to multiple district leaders, to professional practice, to in-store colleagues, and called other stores in the district on my free time and begged them not to accept these prescriptions as valid.

If I move forward with the Qui Tam whistle blow, it will be much more than a $5 million issue on its own. And yet, despite all this, I have hope CVS has the power to change and give me what I've always wanted—to be treated fairly.

The problem is, every time I don't get treated fairly, the cost of fairness goes up. And I'm not being sarcastic or flippant. It truly would have cost nothing to supply me a CVS lawyer, as it would have been provided to any other pharmacist not on FMLA. It would have cost nothing to not threaten me with termination. It would have cost nothing to discipline the DLs who violated my rights. It would have cost a few extra tech hours and pharmacist hours to ensure patient safety. It would have cost negligible amounts to educate and train staff to not accept invalid fax prescriptions and to create processes to audit this.

Unfortunately, now, fair means compensation for my damages. And my damages are approximately $4 million. And if I'm not treated fairly in this attempt to settle I will move to retaining an attorney, commencement of complex litigation, complaints to the NYS Division of Human Rights and pursuit of a Qui Tam action which will yet again increase the cost of fairness.

I really want to stress to you, however, that I do not want to enter litigation. I want to settle. I don't want to be interrogated and treated as if I'm somehow the one who did something wrong and I don't want to engage in deposing CVS. I just want to move on.

I sincerely hope you will consider my position and make an offer commensurate with the reality of our situation.

Respectfully,

December 19th, 2022

Via email to Christopher Duffy

Chris Duffy
District Leader
CVS Health

Cc: HR, Legal

**Re: Sarah Marino Resignation and *Final Offer to Settle***

Dear Mr. Duffy:

As you know I have advised against the upcoming reduction of Pharmacist hours being mandated in CVS Store #5357.

In addition, my claims of discrimination, coercion, unpaid wages and deprivation of benefits while on FMLA leave have still not been addressed by CVS.

As a result, this is notice of my resignation effective January 15th, 2023 and my *final offer to settle my claims outside of court*.


    1.   Notice of non-compliant store policy

On December 12th, 2022 I was notified of a CVS mandate that will reduce pharmacist hours in my store, CVS Store #5357.
As the Managing Pharmacist of CVS Store #5357 I am the expert on in-store patient safety and compliance. I was not consulted on this reduction before it was planned, constructed or mandated.

At a minimum the store will be unable to comply with Offer to Counsel Laws such as NYS Pharmacy Law 8 CRR-NY 63.6 (B) (8) and OBRA '90.

Practicing in a pharmacy that I assess to be not compliant with the law is unprofessional conduct prohibited by Article 137, Part 29 of the NYS Rules of the Board of Regents.


2.    Unanswered Labor Claims

In my September 30th, 2022 letter I claimed that CVS coerced me unlawfully to work in non-compliant pharmacy conditions under the threat of termination, a threat made to me while pregnant and while working unpaid additional hours. When a failure to counsel error did occur as a result of these conditions, CVS deprived me of the benefit of legal counsel while on FMLA Leave, a benefit the Company affords to all pharmacists as part of its corporate policy in responding to regulatory inquiries.

CVS has still not attempted to mediate my labor claims.

Here is a summary of my claims against CVS:

- Pregnancy discrimination in threatening to terminate if me there are any slowdowns to productivity while pregnant.
  - The Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions
- Coercion by threats of retaliatory termination to work in a non compliant pharmacy including in a pharmacy with violations of FCA.
  - Coercion to require a Pharmacist to practice out of compliance with the law is unlawful and potentially criminal. New York Penal Law 135.65.
- FMLA interference and denial of benefits (as pertains to depriving me of CVS legal counsel for the NYS OPD Matter, a benefit given to all Pharmacists facing a regulatory event).
  - Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit discrimination or retaliation against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.
- Unpaid wages and denial of payment for mandated work effectively lowering my salary.
  - Reductions in the predetermined salary of an employee who is exempt under Part 541 of the Department of Labor's regulations will ordinarily cause a loss of the ex no emption.

To date, I have not received any communications from HR, Legal or anyone other than you, my direct superior, after my delivery of a formal written communication of my grievances.

CVS Human Resources Department has thus far failed to explore or investigate my claims with me. This may be legally actionable and CVS HR and CVS Executives could be individually held liable. Per Sirois v. East West Partners, Inc., it is illegal for Human Resources and Corporate executives to aid or abet those engaging in conduct prohibited by employment discrimination laws.

In practice, when I have inquired about the progress of my claims you have sought to stall or outright deny me mediation through the following false statements:

- Conflating my labor grievances with the NYS OPD Matter as a basis to not further mediate my labor claims despite the issues being *legally separate*. I.e."Sarah, we can't talk about your 'issues' until OPD finalizes their settlement with you."
- Falsely claiming an inability to discuss these matters with me on the basis of my having retained outside counsel for the NYS OPD Matter (again conflating two separate matters in an attempt to deprive me of mediation), despite previous CVS Management advising me to retain said counsel (in direct contravention of company policy) and further *never* communicating with the aforementioned counsel on these labor claims in the first place. I.e., "Sarah, you have a lawyer, we can't just talk to you now."

As stated verbally and now in writing, please do not attempt to correspond with my counsel for the NYS OPD Regulatory Matter regarding these labor claims. Kristina Giyaur is my counsel for the NYS OPD matter, not these labor claims.

I do not currently have counsel with regard to my labor claims.

If and when this proceeds to a lawsuit I may retain counsel at that time.

3.    Additional Retaliatory Behavior

On September 30th, 2022, I formally notified you of, among other claims, that I had been threatened with retaliatory termination.

This retaliatory behavior has not stopped.

As a point of fact, I had a conversation on 12/16/22 with you where I was told that if I did not agree to work with reduced pharmacy hours in non-compliance with patient safety laws then (management) would have to "see about other positions for me."

This was immediate and contemporaneous retaliatory behavior to my patient safety concerns.

This retaliation may have originated with my initial claims.

If this retaliation did originate with those claims, then threats to cause materially adverse actions to my employment in retaliation could be legally actionable.

In addition, the planned reduction in staff hours is not being done across all stores equitably or proportionally.

This reduction in pharmacist hours comes to CVS Store #5357 even after unprecedented growth in revenue and prescription volume while other stores that have had less growth, no growth or negative growth receive no reductions.

This uneven and unfair treatment of the store I lead could also originate with my recent labor claims.

Such retaliation or creation of a hostile work environment may be legally actionable.

These new claims of retaliation when patient safety concerns were raised are in direct factual similarity to my initial claims.

This shows not just a single instance, but a pattern of retaliatory behavior against me when I attempt to prioritize patient safety and compliance over productivity, ***something I am legally required to do***.

This demonstrates a systematic pattern of policy making that subordinates patient safety and pharmacist safety to other corporate objectives.

4.    Preservation of Records

Having received notice of all the aforementioned, CVS is under legal obligation to preserve all records connected to these matters and it would be illegal to destroy or otherwise make inaccessible any records validating the facts.

5.   <u>Final Offer to Settle</u>

*As a result of this failure to communicate and in connection with my resignation:*

*I am hereby requesting an immediate monetary offer to settle all of my claims plus interest plus   my bonus for the full year of 2022.*

*While I am not making a specific numeric demand, please be advised that I am well aware of the damages inherent in my claims:*

- *Victims of FMLA violations are entitled to loss of future wages associated with the violation, plus liquidated damages, emotional damages, punitive damages and attorney's fees.*

  - *The deprivation of CVS counsel during my FMLA Leave required me to face a NYS OPD matter without the same support given to every other pharmacist. This  resulted in permanent damage to my license, damage to my ability to obtain future positions, damage to my future earning power as well as severe emotional distress.*

- *Victims of employment discrimination are entitled to economic damages, emotional distress damages, and in certain circumstances, punitive damages.*

  - *Pregnancy is a federally protected status. Threatening to fire a pregnant woman who voiced concerns about patient safety and work volume as her pregnancy goes into its later stages is a violation of the law.*

- *Victims of employers who failed to pay them proper wages may file a private suit for back pay and an equal amount as liquidated damages, plus attorney's fees and court costs*

  - *I have documented videos and text messages showing I worked unpaid hours frequently above 50 hours per week for mandated tasks. I communicated this additional work to my leaders in connection with mandated items such as overseeing overnight construction of my store, completing training I could not complete during my shift, managing my team and managing store issues I could not manage while on the bench since I was never provided management hours. I*

*asked for pay and was told I could not receive it. I calculate at least 700 hours of unpaid wages, many of which would be overtime if my exempt status was lost due to reductions in my rate of pay.*

- *Qui Tam settlements provision for 15% to the whistleblower. Per Berg and Androphy Qui Tam settlements since 1988 have averaged $3.3 Million per instance with $562,000 to the whistleblower.*

  - *The system wide acceptance of invalid faxes as prescriptions to maintain productivity has been coached and implemented by management. To this day, invalid electronic prescriptions are being received and processed by CVS as legitimate.*

*Please be fairly warned, this will be my final attempt to mediate this matter outside of court.*

*Failure to initiate honest, good-faith mediation of this matter by January 1st, 2023 will be interpreted as further bad faith in addressing these legitimate claims.*

6.    <u>Lawsuit as Last Resort</u>

If CVS remains silent and continues to fail in addressing my claims and producing an offer to settle then this will leave me no choice but to initiate a lawsuit. I will have no other recourse than to legally compel CVS to address my grievances.

Furthermore, contemplating the need to proceed to a lawsuit simply to mediate a discussion of my claims, I will seek ongoing, contemporaneous payment of my legal fees to effect as much.

7.    **<u>Whistleblower</u>**

As part of making this a matter of public record, if a lawsuit is required to compel mediation of my claims I will also be seeking to report the associated Qui Tam / FCA issues identified in my claims with the proper authorities as I will have lost faith that these issues can be remedied internally.

8.    **<u>Future Correspondence</u>**

All communication on this matter must be in writing from this point forward. This will allow me to deliberate and react reasonably. This can be done via email or more informal manner via text message or other secure messaging.

In the event an in-person communication is required on this matter I demand that it be requested with explanation as to why written correspondence could not suffice.

If the request is reasonable, in good faith, and accepted I will require the meeting to be recorded.

If deposition on this matter intends to be requested before going to court please note I will require that I be allowed to ask a set of deposing questions in further inquiry of my claims before deciding whether to proceed with allowing my own deposition.

Respectfully,
Sarah Ritter Marino PharmD, RPh

September 30, 2022

Via email to Christopher Duffy,
CC Rx Regulatory

Christopher Duffy
District Leader
CVS Health

Dear Mr. Duffy,

I am writing to you as my current District Leader regarding a very difficult position I have been placed in after ten years of loyal service to CVS. I am coming to you because it is my sincere hope to resolve this internally, in good faith.

To give you a brief overview of the situation, on October 30th, 2019, I was the verifying pharmacist at CVS #05357 when a dispensing error occurred. A patient received a higher dose of Ozempic than was medically advisable.

As a result, a complaint was filed with the NY State Board of Pharmacy. Subsequent to the complaint, in June 2020, an investigation was started by the NYS Office of Professional Discipline while I was on FMLA with my second child. As a result, the OPD is now offering to settle the matter with me for a two year stayed suspension of my pharmacist license and three years of probation, which will run concurrently (I will be on one more year of probation after the first two years). OPD is also telling me that as part of this offered deal, I will have to pay a fine of $5,000.00.

While I am the focus of the OPD penalty for the aforementioned error, I believe the following factors at CVS significantly led to this outcome:

1.  At the time the error occurred, and leading up to the error, I was being forced to work unpaid hours / unpaid overtime to meet performance targets while Pharmacist and Technician hours were cut and additional requests for hours were denied.
2.  Further, with respect to those targets, I was advised by leadership, while pregnant, that I was required to do what was necessary and that any slowdown in work would result in my termination – a threat that I now know was not lawful, but I did not know this at the time and thought it was company policy.
3.  In addition, the faxed-in prescription that was filled in error was an invalid prescription. At the time, Pharmacists at CVS were being trained and encouraged to fill these invalid fax prescriptions contrary to the interests of patient safety, NY State Law, and FCA Law/Qui Tam, a documented issue I raised internally on multiple occasions. It was not until an August 2022 memo that Pharmacists received a clear directive to not fill these faxed invalid prescriptions.
4.  Finally, after the error occurred and when the NYS OPD Investigator reached out to me in June 2020, I was on FMLA Leave. I immediately tried to collaborate with my District Leader. Despite my protected status on FMLA, I was denied access to a CVS lawyer and instructed wrongly that I was required to provide a statement to the investigator while on FMLA Leave alone, without a lawyer, in direct disagreement with CVS policy as stated in CVS Training Module 269022 "Reporting Regulatory Visits".

I have no doubt that the long unpaid hours, the threats to me of being fired while I was pregnant, the policy of filling invalid fax prescriptions, as well as the fact that I had no functioning support system from leadership when the error occurred, contributed significantly to the error that was made and how it was

ultimately handled by OPD. The pressure to perform while pregnant was also very intense and contributed to the error.

In the 10 years I have worked at CVS, I have been an exemplary colleague and an excellent pharmacist without any other disciplinary issues.  In fact, I was a Paragon winner and a graduate of Foundations for Leadership, a track to District Leadership, which by the way, ended suddenly upon my first pregnancy.

In light of all of this, I am respectfully reaching out to request that CVS do the right thing and help me. The fine and legal bills alone are more than $15,000.00. The permanent stain on my professional record damages my license. Finally, Probation with OPD means that if I remain in a high risk position this could result in losing my license permanently.

I am therefore initiating the dialog by asking that CVS cover the cost of the fine and my legal bills and compensate me for the permanent damage to my Pharmacist license. I am also requesting to change to an alternate position within CVS Health to reduce the risk to my license during Probation—preferably with less bench time (eg Local district leadership/ Emerging leadership, CVS Health remote work opportunity, Caremark remote position).

I think this is the fair thing for CVS to do. I offer this in good faith as a step forward together that puts all of the above mentioned events behind us. I have always been a team player for CVS and worked at CVS for over ten years without any issue other than this one. I have always done whatever CVS asked for. I started my career as a CVS Intern and I would like to finish many decades in the future with the company I am so dedicated to. I hope that CVS will recognize my loyalty and reciprocate with the same good faith.

Thank you and I look forward to hearing from you.

Respectfully,

Sarah Ritter Marino PharmD, RPh
Pharmacy Manager Store #05357
CVS Health


Attached: Initial Investigation
Document and Dispensing log

THE UNIVERSITY OF THE STATE OF NEW YORK
THE STATE EDUCATION DEPARTMENT
OFFICE OF PROFESSIONAL DISCIPLINE

## PHARMACY INSPECTION REPORT   ☒ Pharmacy   ☐ M/W

Inspection # _W26195_ conducted by

Investigator _Dydiines Dixon_

Date _07/07/20_ Time In/Out _11:30_ , _12:30_

1. Routine
2. New Registration
3. Transfer Ownership
4. Discontinuance
5. Change of Name/Address

6. Medication Recall
7. Complaint Related
8. Follow-up to Previous Inspection
9. Special Project or Renovation

File#_4001536_

Reg. name _CVS Albany, LLC_

Trade name ___

No. and Street _413 RTE 376_

City _Hopewell Junction NY_ County _Dutchess_ Zip _12533_

Reg. # _021995_   Telephone _(845) 522-1350_

Hours open per week _73_   # RXs daily _1,000_

Store _45-357_

| Pharmacists' Names | Hrs. Per Week | License Number | License Date | License Displayed | | Registration Displayed | |
|---|---|---|---|---|---|---|---|
| S.P. Anthony Speca | 38 | 063482 | 9/20/17 | Y | N | Y | N |
| Pharm. Anthony Cytryn | 38 | 040023 | 8/28/12 | Y | N | Y | N |
| Pharm. Sarah Bethany Ritter | 38 | 058128 | 7/18/13 | Y | N | Y | N |
| Pharm. | | | | Y | N | Y | N |
| Pharm. | | | | Y | N | Y | N |
| Intern | | | | Y | N | Y | N |

Circle "S" if item is Satisfactory. Circle "N" if item is Not Satisfactory, and explain in Details of Inspection section below.
Be sure to include item number in explanation.

1. Registration name on exterior ............... S N
2. Licenses/current reg. displayed ............ S N
3. Registered pharmacist on duty ............. S N
4. Equip., facilities, and ref. items ............ S N
5. Price list available/current ................... S N
6. Drug stock current ................................ S N
7. Stock properly branded .......................... S N
8. Daily RX record ..................................... S N
9. Required RX filings ................................ S N
10. DEA records complete/available ............ S N
11. Safety/approp. closures/containers ........... S N

12. RX labels required information ................... S N
13. Valid RX formats ................................... S N
14. Substitution law compliance .................... S N
15. Required information on RXs .................... S N
16. Refill authorization/fill ............................ S N
17. Refills in daily record ............................. S N
18. Controlled substance compliance .............. S N
19. General sanitation ................................. S N
20. Intern/unlicensed supervision ................... S N
21. Counseling offered/given/refusals documented.. S N
22. Types of pharmacy (circle those applicable): retail, hospital, skilled nursing, assisted living, compounding, sterile preparation, internet, home delivery, mail delivery, nuclear, veterinary

Details of Inspection _An inspection was conducted at the location above. Present was staff Pharmacist Anthony Cytryn. Anthony was briefed on the complaint made by Pt. Jamie Gonzales. Re: Receiving wrong dosage for "Ozempic". Pt. profile was obtained RX # 1530711, written for Ozempic (1 MG Dose) 0.25mg & Daily log was obtained. Records explicitly indicate That Sarah Ritter-Mann filled The RX, & Sarah Mann's contact number_

Recommendation (completed in office)

Investigator _Dydiines DC._

Supervisor _V.T.B._

I have received a copy of this inspection report.

Signature _[signature]_

Print name _Anthony Cytryn_

Title _Pharmacist_   Date _7/7/20_

This is page _1_ of _1_ page(s)

OPD 234 (5/2011) 11-005 CDC

ORIGINAL - TO CENTRAL OFFICE

CVS PHARMACY   # 05357

PRESCRIPTION REGISTER

10/31/2019 THRU 10/31/2019

DATE/TIME–   07/07/2020 10:57 AM

Page 18 of 42

| RX # | RFL<br>RFA | R-DATE<br>O-DATE | CUSTOMER<br>NAME<br>ADDRESS | DRUG DESCRIPTION | | NDC #<br>ST | SCH<br>DR-DEA-# | DOCTOR<br>NAME<br>DR ADDRESS | QTY | PRICE | COPAY | COST | 3RD<br>ST | IN | TI | TYPE |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| | | | | CITY | | | | | | CITY | | 3CPAY | | | |

| 30711 | 000 | 103119 | GONZALEZ JAIME | OZEMPIC 1 MG DOSE PEN | | 00169413602 | | G VIRK | 3 | 705 00 | 15 00 | 973 20 | 38000 | | |
| | 1 | 103119 | 159 WOODCREST DR | | HOPEWELL<br>JUNCTION | NY | | GURVINDER<br>MV2920494  684 STONELEIGH AVE | | | | | CARMEL | NY | 750 06 |
| 30745 | 000 | 103119 | COLLINS TRACK | | | | | | | | | | | | | |

PRESS FIRMLY TO SEAL    PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PME 1-DAY
FISHKILL, NY
12524
JAN 25, 23
AMOUNT
**$28.75**
R2304M116590-02

.DC 07     10007

# PRIORITY
# MAIL
# EXPRESS®

**UNITED STATES POSTAL SERVICE** ®    PRIORITY MAIL EXPRESS®

EI 577 845 546 US

## FLAT RATE ENVELOPE
### ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

PS10001000006

EP13F July 2022
OD: 12 1/2 x 9 1/2

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 914 ) 456 - 2121
SARAH MARINO
88 DELAVAN AVE
BEACON, NEW YORK 12508

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☑ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |

PO ZIP Code   Scheduled Delivery Date (MM/DD/YY)
12524    1/26/23    $ 2875

Date Accepted (MM/DD/YY)   Scheduled Delivery Time   Insurance Fee   COD Fee
1/25/23    ☐ 6:00 PM

Time Accepted   ☐ AM ☐ PM    Return Receipt Fee   Live Animal Transportation Fee

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

Special Handling/Fragile   Sunday/Holiday Premium Fee   Total Postage & Fees
$ 2875

Weight   ☐ Flat Rate   Acceptance Employee Initials
lbs.    oz.    80

TO: (PLEASE PRINT)   PHONE ( )
USDC SDNY
Pro Se Intake Unit (RM 200)
500 Pearl Street
NY, NY
ZIP + 4® (U.S. ADDRESSES ONLY)
1 0 0 0 7 - ___

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)   Time   ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)   Time   ☐ AM ☐ PM   Employee Signature

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance included.

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996

**► PEEL FROM THIS CORNER**

 

**UNITED STATES POSTAL SERVICE** ®

This package is made from post-consumer waste. Please recycle – again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; July 2022; All rights