Copy mailed by chambers 10-16-23 DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SARAH RITTER MARINO,                          :
                        Plaintiff,            :
                                              :          **OPINION AND ORDER**
v.                                            :
                                              :          23 CV 784 (VB)
CVS HEALTH and HILLARY WILLIAMS,              :
                        Defendants.           :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Sarah Ritter Marino, proceeding pro se, brings this action against her former

employer, CVS Rx Services, Inc. ("CVS"),[1] and a CVS employee, Hillary Williams, alleging

they interfered with and retaliated against her for exercising her rights under the Family Medical

Leave Act ("FMLA"), discriminated against her based on her pregnancy in violation of the New

York State Human Rights Law, and failed to pay her overtime wages in violation of the Fair

Labor Standards Act and the New York Labor Law.  (Doc. #1 ("Compl.")).

       Now pending is defendants' motion to dismiss the complaint or, alternatively, to stay this

this case and compel arbitration pursuant to the Federal Arbitration Act ("FAA").  (Doc. #11).

       For the reasons set forth below, the motion to compel arbitration is GRANTED, and this

action is STAYED pending arbitration.

       The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

I.     Plaintiff's Employment with CVS

       Plaintiff began working for CVS as a Registered Pharmacist in 2012.  After taking leave

following the birth of her first child in 2017, plaintiff became the Pharmacy Manager of a CVS

---

[1]        Incorrectly sued herein as "CVS Health."  (See Doc. #11).

1

store in Hopewell Junction, New York.  Plaintiff alleges, in 2019, during her second pregnancy, her supervisor demanded she work overtime without pay—including overnight—and threatened her with termination if she failed to comply.  Plaintiff then took FMLA leave again in April 2020 following the birth of her second child, and she asserts she was asked to perform work tasks without pay during this period.  Upon returning to work in 2021, plaintiff contends she complained about this poor treatment and about CVS's staffing practices, working conditions, and handling of a medication dispensing error.  Plaintiff alleges she was ultimately forced to terminate her employment in January 2023 in retaliation for her complaints.

II.     The Arbitration Agreement

During the week of October 5, 2014, CVS introduced an employment-related arbitration policy entitled "Arbitration of Workplace Legal Disputes Policy."  (Doc. #14 ("Bailey Decl.") ¶ 6; see also Doc. #14-1 (the "Arbitration Agreement")).

The Arbitration Agreement provides, in relevant part:

1. **Mutual Obligation to Arbitrate.**  Under this Policy, CVS Heath (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided by this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16).  Employees accept this Policy by continuing their employment after becoming aware of the Policy.

2. **Claims Covered by This Policy.**  Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's Employment.

   Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, . . . leaves of absence, harassment, discrimination, retaliation and termination arising under the . . . Family Medical Leave Act, Fair

Labor Standards Act, . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

(Arbitration Agreement at ECF 2–3).[2]

The Arbitration Agreement does not apply to "claims by an Employee for workers compensation, state disability insurance, unemployment insurance benefits or claims for benefits under an employee benefit plan." (Id. at ECF 3).

In October 2014, when it introduced the Arbitration Agreement, CVS asked employees to participate in an online training course called "Arbitration of Workplace Legal Disputes (Course No. 800305)." (Bailey Decl. ¶ 8). The course was available through CVS's online training portal, LearNet. CVS employees each received unique log-in credentials for the portal. (Id. ¶¶ 5–8).

The training course consisted of an interactive PowerPoint presentation with information about the Arbitration Agreement. (Doc. #14-2 (the "PowerPoint Presentation")). The third slide in the PowerPoint Presentation contains a link to an embedded document entitled "CVS Health Colleague Guide to Arbitration." (Doc. #14-3 (the "Policy Guide"); see also PowerPoint Presentation at ECF 3). The Policy Guide discusses arbitration generally, summarizes and explains the Arbitration Agreement, and describes the benefits of arbitration. The Arbitration Agreement is attached in full at the end of the Policy Guide. (Policy Guide at ECF 10).

Employees participating in the training cannot continue past the third slide in the

---

[2]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

PowerPoint Presentation without clicking into and viewing the Policy Guide.  (Bailey Decl. ¶ 10; PowerPoint Presentation at ECF 4).

Once an employee has reviewed and closed the Policy Guide, the fourth slide informs the employee: "Now that you have read the training guide and policy, it is time to complete the acknowledgement."  (PowerPoint Presentation at ECF 19).  On the fifth slide, employees are asked to acknowledge several statements, including that they have read the Arbitration Agreement, that they understand the Arbitration Agreement applies to them, and that they may opt out within thirty days by sending CVS written notice.  Another one of the acknowledgements states:  "by being covered by the Policy and not opting out, CVS Health and I are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy."  (PowerPoint at ECF 20).  The acknowledgment slide prompts employees to click "Yes" to create an electronic signature "confirm[ing] your acknowledgements."  (PowerPoint at ECF 20).  Employees cannot complete or receive credit for the training course without clicking "Yes" on the acknowledgment slide.  (Bailey Decl. ¶¶ 12, 17).

According to records CVS maintains from LearNet, copies of which were submitted with defendants' motion, plaintiff completed the online training on October 13, 2014.  (Doc. #14-4 at ECF 18).  In addition, plaintiff did not opt out of the Arbitration Agreement within thirty days.

**DISCUSSION**

I.    <u>Standard of Review</u>

In deciding a motion to compel arbitration under the FAA, courts apply a "standard similar to that applicable for a motion for summary judgment."  <u>Bensadoun v. Jobe-Riat</u>, 316

F.3d 171, 175 (2d Cir. 2003).[3]  Therefore, the Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" and "draw[s] all reasonable inferences in favor of the non-moving party."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

"The threshold question facing any court deciding a motion to compel arbitration is whether . . . the parties have indeed agreed to arbitrate."  Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012).  Parties may explicitly delegate to an arbitrator gateway issues of arbitrability, "such as whether the arbitration clause applies to a particular dispute, or whether it is enforceable."  Doctor's Assoc., Inc. v. Alemayehu, 934 F.3d 245, 251 (2d Cir. 2019). However, a court must decide whether an agreement to arbitrate exists in the first instance.  Id.

As plaintiff is proceeding pro se, the Court construes her submissions liberally, "interpreting them 'to raise the strongest arguments that they suggest.'"  Bryant v. Wright, 451 F. App'x 12, 13 (2d Cir. 2011).[4]

II.     Agreement to Arbitrate

Defendants contend plaintiff agreed to arbitrate the instant dispute.

The Court agrees.

A.     Legal Standards

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."  Hines v. Overstock.com, Inc., 380 F.

---

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

App'x 22, 24 (2d Cir. 2010) (summary order).  "This burden does not require the moving party to show initially that the agreement would be <u>enforceable</u>, merely that one existed."  <u>Id</u>.  Once that is established, the burden shifts to the non-moving party to show there are factual disputes regarding the parties' agreement to arbitrate.  <u>See</u> <u>Oppenheimer & Co. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995).  If the party opposing arbitration raises a genuine issue of fact whether there was an agreement, a court must "proceed summarily to the trial thereof."  9 U.S.C. § 4.  However, "[w]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," the court may rule on the motion "and avoid the need for further court proceedings."  <u>Meyer v. Uber Techs., Inc.</u>, 868 F.3d 66, 74 (2d Cir. 2017).

        In considering whether parties agreed to arbitrate a particular dispute, federal courts "apply ordinary state law principles that govern the formation of contracts."  <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).

        Under New York law, to prove the existence of an enforceable agreement, the moving party "must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  <u>Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade</u>, 98 A.D.3d 403, 404 (1st Dep't 2012), <u>aff'd</u>, 20 N.Y.3d 1082 (2013).  Mutual assent may be expressed "by word, act, or conduct which evinces the intention of the parties to contract."  <u>Minelli Constr. Co. v. Volmar Constr., Inc.</u>, 82 A.D.3d 720, 721 (2d Dep't 2011).  For example, a party is bound by contract terms when "he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent."  <u>Fisher v. Aetna Life Ins. Co.</u>, 32 F.4th 124, 136 (2d Cir. 2022).

"[W]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."  Soliman v. Subway Franchisee Advert. Fund Tr., 999 F.3d 828, 839 (2d Cir. 2021).  For instance, "[c]ourts routinely uphold clickwrap agreements"—which "require users to click an 'I agree' box after being presented with a list of terms and conditions of use"—"for the principal reason that the user has affirmatively assented to the terms by clicking 'I agree.'"  Meyer v. Uber Techs., Inc., 868 F.3d at 75.  As such, "[a]n electronic click can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."  Id.

  B.  Analysis

Plaintiff does not dispute she signed the Arbitration Agreement and failed to timely opt out within thirty days.  Moreover, CVS's records indicate plaintiff completed the mandatory arbitration training course on October 13, 2014, which necessarily means she viewed the Policy Guide and the Arbitration Agreement.  Plaintiff also does not dispute she acknowledged (i) she had reviewed the agreement, (ii) she understood it applied to her, and (iii) if she did not opt out, both she and CVS would be required to arbitrate any legal claims covered by the Arbitration Agreement.  Under these circumstances, "no reasonable trier of fact could find that [plaintiff] did not assent to the arbitration."  Flores v. Chime Fin., Inc., 2022 WL 873252, at *5 (S.D.N.Y. Mar. 23, 2022).

Defendants have also demonstrated the Arbitration Agreement was presented clearly and conspicuously to plaintiff.  Language throughout the training course put plaintiff on notice she would be asked to read and acknowledge an agreement.  (See, e.g., Policy Guide at ECF 9 ("In order to receive credit for the completion of this training, you will need to review the CVS

Health Arbitration of Legal Workplace Disputes Policy and then complete the acknowledgement.")).  Moreover, the acknowledgement slide at the end of the course warned plaintiff that by clicking "Yes," she would agree to certain statements and her click would "create[] an electronic signature that is legally binding."  (PowerPoint Presentation at ECF 20).

Although plaintiff seems to argue in her opposition that she signed the acknowledgement under duress—i.e., that she had no choice but to complete the acknowledgement because she had to complete the training—the acknowledgement conspicuously states that an employee has thirty days to opt out of the Arbitration Agreement.  This provision negates any suggestion plaintiff was forced to enter into the Arbitration Agreement.  See Simeon v. Domino's Pizza LLC, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019) (rejecting the plaintiff's argument that an employment arbitration agreement was "equivalent to a mandatory arbitration provision" because it provided the employee thirty days to opt out through written notice).[5]

Accordingly, the Court concludes defendants have demonstrated the parties entered into an agreement to arbitrate.  See Hines v. Overstock Inc., 380 F. App'x at 24.

III.     Challenges to the Validity of the Agreement to Arbitrate

As discussed above, the Court concludes the terms of the Arbitration Agreement were conspicuously presented and rejects plaintiff's argument that these terms were "buried" or "submerged" in the PowerPoint Presentation or the Policy Guide.  (See Doc. #18 at 9).

---

[5]     Equally unavailing is plaintiff's argument that she was somehow defrauded into agreeing to arbitrate because the Arbitration Agreement was introduced in the PowerPoint Presentation and the Policy Guide, rather than as a stand-alone document.  These documents demonstrate plaintiff was given notice several times—and in multiple formats—that she would be entering into a binding agreement.

However, to the extent plaintiff challenges the enforceability or validity of the Arbitration Agreement on similar grounds, defendants argue the parties clearly and unmistakably delegated to the arbitrator questions concerning the enforceability or validity of the contract.

The Court agrees.

When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 528 (2019). "Like other contracts, [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Rent-A-Center West, Inc. v. Jackson, 561 U.S. 63, 68 (2010).

Nevertheless, "absent a specific challenge [to a delegation provision], the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld." Vargas v. Bay Terrace Plaza LLC, 378 F. Supp. 3d 190, 196 (E.D.N.Y. 2019). "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center West, Inc. v. Jackson, 561 U.S. at 71.

The Arbitration Agreement explicitly delegates disputes related to validity or enforceability to the arbitrator:

> Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

(Arbitration Agreement at ECF 3.)

This provision "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator," not this Court. Metro. Life Ins. Co. v. Bucsek, 919 F.3d 184, 191 (2d Cir. 2019).

IV.   <u>Transportation Workers' Exemption from the FAA</u>

Plaintiff argues she cannot be compelled to arbitrate her claims pursuant to the FAA because she was exempt from the FAA as a "worker engaged in interstate commerce" during her tenure at CVS.  9 U.S.C. § 1.

The Court disagrees.

A.   <u>Legal Standards</u>

Section 2 of the FAA provides:  "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Before a court can "invoke its statutory powers under [Sections] 3 and 4 [of the FAA] to stay litigation and compel arbitration according to a contract's terms, [it] must first know whether the contract itself falls within or beyond the bounds of [Sections] 1 and 2 [of the FAA]."  <u>New Prime, Inc. v. Oliveira</u>, 139 S. Ct. 532, 537 (2019).  And although the law evinces a "liberal federal policy favoring arbitration agreements," <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983), Section 1 of the FAA explicitly excludes the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce" from coverage.  9 U.S.C. § 1.  Accordingly, "[a] court should decide for itself whether [Section] 1's 'contracts of employment' exclusion applies before ordering arbitration."  <u>Id</u>.

The phrase "any other class of workers engaged in . . . commerce" is a "residual provision," which should be construed narrowly to encompass "transportation workers" who play a "necessary role in the free flow of goods".  <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S.

105, 118, 121 (2001).  For purposes of the FAA, an individual is a "transportation worker" "if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement."  Bissonnette v. LePage Bakeries Park Street, LLC, 49 F.4th 655, 661 (2d Cir. 2022). "Put another way, transportation workers must be actively 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce."  Southwest Airlines Co. v. Saxon, 142 S. Ct. 1783, 1790 (2022).

   B.   Analysis

   Plaintiff states her duties as a Registered Pharmacist and Pharmacy Manager involved handling, dispensing, and—occasionally—delivering medications that flowed in interstate commerce.  This does not raise a genuine issue of fact regarding whether the Arbitration Agreement that plaintiff signed is exempt from the FAA.  CVS's customers do not "buy[ ] the movement" of medications or controlled substances, "so long as they arrive."  Bissonnette v. LePage Bakeries Park Street, LLC, 49 F.4th at 661–62.  While CVS may make and receive deliveries of goods in interstate commerce, "the movement of those goods is at most a component of total price."  Id. at 662 (explaining that contracts with workers who transport baked goods by truck were not exempt from the FAA because "[t]he commerce is in breads, buns, rolls, and snack cakes—not transportation services").  In other words, CVS does not operate in the transportation industry.

   As "only a worker in a transportation industry can be classified as a transportation worker," Bissonnette v. LePage Bakeries Park Street, LLC, 49 F.4th at 661, plaintiff does not satisfy the statutory exclusion and, therefore, the Arbitration Agreement is not exempted from the FAA.

V.    Stay

Defendants request that the Court stay these proceedings pending the arbitration.

"The district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."  Nicosia v. Amazon.com, Inc., 834 F.3d at 229.

Because the Court determines the parties agreed to arbitrate, the litigation must be stayed.

**CONCLUSION**

The motion to compel arbitration and stay this action is GRANTED.

The parties are ORDERED to arbitrate their dispute.

This action is STAYED pending arbitration.

The Clerk is instructed to terminate the motion.  (Doc. #11).

The Clerk is further instructed to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[6]

Chambers will mail a copy of this Opinion and Order and all unpublished opinions cited herein to plaintiff at the address on the docket.

Dated:  October 16, 2023
        White Plains, NY

                        SO ORDERED:

                        Vincent L. Briccetti
                        United States District Judge

---

[6]    See Zimmerman v. UBS AG, 789 F. App'x 914, 915–16 (2d Cir. 2020) (summary order) ("The district court's administrative closure of the case does not constitute a final decision:  there is no jurisdictional significance to a docket entry marking a case as 'closed,' which we assume was made for administrative or statistical convenience.").